IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
<u>DALLAS DIVISION</u>

| | |
|---|---|
| LINDA K. BLANKMAN, individually and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>v.<br><br>MICHAEL J. BRADLEY, JAMES W. BRYANT, RODNEY L. GRAY, JOHN W. MCREYNOLDS, MATTHEW S. RAMSEY, REGENCY ENERGY PARTNERS LP, REGENCY GP LP, REGENCY GP LLC, ENERGY TRANSFER PARTNERS, L.P., ENERGY TRANSFER PARTNERS, GP, L.P., and ENERGY TRANSFER EQUITY, L.P.,<br><br>                       Defendants. | C.A. No.: 3:15-cv-339<br><br>CLASS ACTION |

**<u>CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY</u>**

Plaintiff Linda K. Blankman ("Plaintiff"), by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on personal knowledge, as follows:

**<u>NATURE OF THE CASE</u>**

1.      Plaintiff brings this class action on behalf of the unitholders of partnership units of Regency Energy Partners LP ("Regency" or the "Partnership") against the members of the Board of Directors (the "Board" or the "Individual Defendants") of Regency GP LLC (the "Regency GP LLC"), the general partner of Regency's general partner, Regency GP LP ("Regency GP")for their breaches of fiduciary duties arising out of their attempt to sell the Partnership to Energy Transfer Partners, L.P. ("ETP") by means of an unfair process and for an unfair price.

2.     On January 26, 2014, ETP and the Partnership announced that they, along with Regency GP, Energy Transfer Partners, GP, L.P. ("EGP"), and Energy Transfer Equity, L.P. ("ETE"), the parent entity of Regency, Regency GP, ETP, and EGP, had entered into an agreement that will culminate in ETP acquiring all of the outstanding units of Regency in a mixed units-and-cash transaction. Regency unitholders will receive 0.4066 common units of ETP and $0.32 in cash for each unit of Regency they own (the "Merger"). Based on the closing price of ETP units on January 23, 2015, the last trading prior to the announcement of the Merger, the implied value of the total consideration that the Partnership's unitholders will receive is approximately $26.89 per unit, or a total transaction price of approximately $18 billion. Through the Merger, ETE is attempting to consolidate two of its indirect subsidiary holdings to create the second largest master limited partnership ("MLP").

3.     The Board has breached its fiduciary duties by agreeing to the Merger for grossly inadequate consideration. As described in more detail below, given Regency's recent strong performance as well as its future growth prospects, the proposed consideration unitholders will receive is inadequate and undervalues the Partnership.

4.     ETE acquired Regency GP in May 2010 and controls the Partnership. ETE is also the indirect parent of ETP and EGP. Given ETE's control over both the Partnership and ETP, the inadequate consideration offered in connection with the Merger is unsurprising.

5.     Further, the Individual Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Merger with deal protection devices that preclude other bidders from making a successful competing offer for the Partnership. Specifically, pursuant to the merger agreement dated January 25, 2015 (the "Merger Agreement"), Defendants agreed to: (i) a strict no-solicitation provision that requires the Partnership to terminate any ongoing discussions with

other potential acquirers and from pursuing any alternatives to the Merger; (ii) a provision that provides ETP with five days to match any competing proposal that might arise; and (iii) a provision that requires Regency to pay to ETP a termination fee of $450 million in order to pursue a superior offer.

6. The Individual Defendants have breached their fiduciary duties of loyalty and due care, and ETP, EGP, and ETE have aided and abetted such breaches by Regency's officers and directors. Plaintiff seeks to enjoin the Merger unless and until the Individual Defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff is a citizen of Colorado and no defendant is a resident of Colorado.

8. The Court has personal jurisdiction over each of the defendants because each either is organized under the laws of, conducts business in and maintains operations in this District, or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) the defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of units of Regency. Plaintiff is a citizen of Colorado.

11. Regency is a limited partnership organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 2001 Bryan Street, Suite 3700, Dallas, Texas, 75201.

12. Defendant Regency GP is a limited partnership organized and existing under the laws of the State of Delaware. Regency GP is the general partner of Regency.

13. Defendant Regency GP LLC is the general partner of Regency GP. Importantly, as is common among publicly traded limited partnerships, the Partnership is managed by Regency GP, which in turn is managed by Regency GP LLC's directors and officers. Regency GP LLC is a Delaware limited liability company.

14. Defendant Michael J. Bradley ("Bradley") has been a director of Regency GP LLC since 2008 and is the chief executive officer of Regency. Bradley is a citizen of Texas.

15. Defendant James W. Bryant ("Bryant") has been a director of Regency GP LLC since 2010. Bryant is a citizen of Texas.

16. Defendant Rodney L. Gray ("Gray") has been a director of Regency GP LLC since 2008. Gray is a citizen Georgia. Defendant Gray was formerly the chief financial officer and executive vice president of Cobalt International Energy, Inc., a company headquartered in Houston Texas.

17. Defendant John W. McReynolds ("McReynolds") has been a director of Regency GP LLC since 2010. McReynolds is a citizen of Texas. McReynolds is also the president and a director of ETE.

18. Defendant Matthew S. Ramsey ("Ramsey") has been a director of Regency GP LLC since April 2014. Ramsey is a citizen of Texas.

19. The defendants listed in ¶¶ 14-18 are collectively referred to herein as the "Individual Defendants" or "the Board."

20. Defendant ETP is a limited partnership organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 3738 Oak Lawn Avenue, Dallas, Texas 75219.

21. Defendant EGP is a Delaware limited partnership and the general partner of ETP.

22. Defendant ETE is a Delaware limited partnership and the indirect parent of Regency, Regency GP, ETP, and EGP.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons that own Regency units (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

24. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of January 23, 2015, approximately 410 million common units were represented by the Partnership as outstanding. All members of the Class may be identified from records maintained by Regency or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

25. Questions of law and fact are common to the Class, including:

   (i) Whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Merger;

5

(ii) Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably possible under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Merger;

(iii) Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Partnership or its assets;

(iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;

(v) Whether ETP, EGP, and ETE aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(vi) Whether the Class is entitled to injunctive relief or damages as a result of the defendants' wrongful conduct.

26. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of the defendants' wrongful conduct as alleged herein.

27. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class, and conflicting adjudications for individual members of the Class might, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede

their ability to protect their interests. Moreover, the defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## **FURTHER SUBSTANTIVE ALLEGATIONS**

*Partnership Background and its Poise for Growth*

29. Regency was formed in 2005 and is engaged in the gathering and processing, compression, treating and transportation of natural gas and the transportation, fractionation and storage of natural gas liquids ("NGLs"). Regency is focused on providing midstream services in some of the most prolific natural gas producing regions in the United States, including the Eagle Ford, Haynesville, Barnett, Fayetteville, Marcellus, Utica, Bone Spring, Avalon and Granite Wash shales. The Partnership's assets are primarily located in Texas, Louisiana, Arkansas, Pennsylvania, California, Mississippi, Alabama, New Mexico and the mid-continent region of the United States, which includes Kansas, Colorado, and Oklahoma. The Partnership is a holding company that operates through multiple subsidiaries.

30. Regency's recent acquisitions and expansions have increased the Partnership's ability to generate revenue. In 2013, the Partnership acquired Southern Union Gas Services ("SUGS") from Southern Union, a wholly-owned subsidiary of ETP Holdco Corporation, for $1.5 billion. On February 3, 2014, Regency completed its acquisition of subsidiaries of Hoover Energy Partners, L.P. that are engaged in crude oil gathering, transportation and terminaling; condensate handling; natural gas gathering, treating, and processing; and water gathering and disposal services in the Southern Delaware Basin in west Texas.

31. On February 19, 2014, the Partnership issued a press release announcing its financial results for the fourth quarter and full year 2013. The Partnership announced an impressive 18% increase in adjusted EBITDA, jumping from $517 million in 2012 to $608 million in 2013.

The Partnership attributed this growth primarily "to volume growth in the gathering and processing segment, and in the Lone Star JV, as well as an increase in revenue generating horsepower in the contract services segment." Regency also had a marked increase in the cash available for distribution generated during the year, rising from $310 million in 2012 to $411 million in 2013. The press release described the Company's 2013 accomplishments and guidance for 2014, stating in part:

> "In 2013, we completed the acquisition and integration of the SUGS assets, and brought online a significant amount of organic growth projects which, along with increased drilling activity, contributed to strong growth in our gathering and processing and NGL logistics businesses," said Mike Bradley, president and chief executive officer of Regency. "In addition, improved demand for compression services led to a nearly 20 percent increase in revenue generating horsepower."
>
> "For 2014, we expect strong earnings and volume growth across our base business driven by our substantial organic growth program in 2012 and 2013," continued Bradley. "In addition, we expect the recently acquired Hoover midstream assets, and the proposed acquisitions of PVR Partners and Eagle Rock's midstream business to provide additional growth opportunities, particularly in the Marcellus and Utica Shales in the northeast, the Granite Wash in the Mid-continent and the Permian Basin in west Texas."

The press release also discussed the Partnership's recent cash distribution to unitholders, stating: "On January 28, 2014, Regency announced a cash distribution of $0.475 per outstanding common unit for the fourth-quarter ended December 31, 2013. This distribution is equivalent to $1.90 per outstanding common unit on an annual basis . . . ."

32. Regency's success continued in the first quarter of 2014. On May 6, 2014, the Partnership issued a press release announcing its financial results for the first quarter of 2014. Regency increased its adjusted EBITDA 71% over the first quarter of 2014, shooting from $120 million to $205 million. Likewise, Regency generated $182 million in distributable cash flow during the quarter, which jumped 80.2% from $101 million in the first quarter of 2013. Defendant

8

Bradley was quoted in the press release explaining the Partnership's results and discussing his expectations for the Partnership's future:

> Regency's legacy assets experienced strong performance in the first quarter, where we saw significant volume growth in our gathering and processing and NGL services businesses, as well as a strong increase in revenue generating horsepower for our contract compression business . . . . This growth was driven by the ramp up of our growth projects completed last year, along with increased drilling activity in the majority of our operating regions.
>
> Also during the quarter, we completed our merger with PVR Partners, which contributed incremental earnings for the period since closing. We continue to expect our legacy assets, as well as the PVR assets, to provide significant expansion opportunities in 2014 and 2015 to keep pace with increasing volumes and producer demand . . . .

Regarding the Partnership's cash distribution to unitholders, the press release stated, "On April 28, 2014, Regency announced a cash distribution of $0.48 per outstanding common unit for the first-quarter ended March 31, 2014. This distribution is equivalent to $1.92 per outstanding common unit on an annual basis . . . ."

33. Regency's explosive growth continued into the second quarter of 2014. On August 6, 2014, the Partnership issued a press release announcing its financial results for the second quarter of 2014. The Partnership reported adjusted EBITDA of $307 million, a 98% increase over the $155 million achieved in the same quarter in 2013. Likewise, Regency's distributable cash flow more than doubled over the second quarter of 2013, generating $207 million in the second quarter of 2014 compared to $101 in the same quarter of 2013. Defendant Bradley was quoted in the press release explaining the importance of the Regency's acquisition integration in driving the Partnership's performance:

> In the second quarter, Regency's legacy assets delivered another strong performance, driven by volume growth from completed expansion projects in our gathering and processing and NGL logistics businesses, as well as continued strong demand for contract compression . . . . We were also very pleased with the

performance of the recently acquired PVR assets, which also saw a substantial increase in volumes compared to the second quarter of 2013.

Also, we recently completed our acquisition of Eagle Rock Energy's midstream assets. Once fully integrated, we expect the acquisitions of Hoover, PVR and Eagle Rock to provide significant synergy and expansion opportunities going forward, allowing Regency to continue increasing our footprint and enhancing our services to customers.

34.     Regency also saw tremendous growth in the third quarter of 2014. On November 5, 2014, the Partnership issued a press release announcing its financial results for the third quarter of 2014. Regency announced a 100% increase in adjusted EBITDA, jumping from $172 million in the third quarter of 2013 to $344 million in 2014. Likewise, the Partnership generated $215 million in distributable cash flow during the quarter, which increased by $100 million from $115 million for the same period in 2013. In addition, the Partnership's net income more than doubled, earning $103 million in the third quarter of 2014, compared to $39 million in the same period during 2013. Defendant Bradley again explained the Partnership's stunning performance in the third quarter:

> Regency's legacy assets experienced strong growth in the third quarter driven by continued ramp up in volumes in the gathering and processing and NGL logistics businesses, and a further increase in revenue generating horsepower . . . . In addition, volumes on the PVR assets continued to increase compared to the second quarter of 2014.
>
> The integration of the PVR and Eagle Rock midstream assets continues to progress very well, and we are already uncovering incremental synergy opportunities on top of those previously identified.

In addition, Regency increased its cash distribution to its unitholders in the third quarter, stating in the press release, "On October 28, 2014, Regency announced a cash distribution of $0.5025 per outstanding common unit for the third-quarter ended September 30, 2014. This distribution is equivalent to $2.01 per outstanding common unit on an annual basis . . . ."

35. Regency's unit price on the NYSE remained strong throughout most of 2014 despite falling oil and natural gas prices. In a November 9, 2014 conference call discussing the Partnership's third quarter 2014 earnings, Defendant Bradley commented on Regency's business prospects in light of the falling commodity prices. Bradley stated in part:

> ***[D]espite the recent decline in oil prices, we believe we remain in a good position***, as our assets are located in core areas of basins with strong activity and attractive drilling economics and we continue to focus on maintaining predominantly fee-based margins and a comprehensive hedging program. Through our hedging program, we continue to target entering 2015 with approximately two-thirds of our commodity exposure hedged and we have made significant progress towards reaching those levels. And for full-year 2015, we expect margins to be approximately 75% fee-based.
>
> So in summary, ***we remain very excited as we look forward into 2015 and 2016, as we expect strong continued growth with additional projects coming online***. We now have a current backlog of around $2 billion in approved organic growth projects, net of year-to-date CapEx spend and expect that number to increase soon, and we will discuss more on that at a later time.

(Emphasis added.)

***The Board Breaches Its Fiduciary Duty by Entering Into the Merger for Consideration that Undervalues the Partnership and Fails to Maximize Unitholder Value***

36. In a press release dated January 26, 2015, the Partnership announced that it had entered into the Merger Agreement, pursuant to which ETP will acquire all of the outstanding Partnership units for 0.4066 units of ETP and $0.32 cash. The Partnership unitholders will receive total consideration valued at $26.89 per unit based on ETP's closing unit price on January 23, 2015, the last trading day prior to the announcement of the Merger.

37. Additionally, the Board failed to negotiate a "collar" to protect the consideration offered in the form of units from any sudden sharp movements in the price of ETP's units prior to the consummation of the Merger.

38. Given the Partnership's recent strong performance and its positioning for growth, the Merger consideration is inadequate and significantly undervalues the Partnership.

39. The proposed consideration represents a negative premium to the average closing price of Regency units over the six months leading up to the announcement of the Merger of $28.53 per unit. Further, on November 6, 2014, the day following the press release announcing the Partnership's third quarter financial results, Regency's common units closed at $29.30 on the New York Stock Exchange (the "NYSE"), an increase of $0.50 per unit. This closing price was $2.41 higher than the implied value of the proposed consideration offered in conjunction with the Merger.

40. Furthermore, following Regency's analyst day, held as part of the broader analyst day for the "Energy Transfer family of partnerships" on November 17, 2014, analysts valued the Partnership approximately $1 billion above the value offered in the Merger. Reporting on the Partnership's presentation at its analyst day, analysts from Alerian, an energy- and MLP-centered indexing company, stated in an article on the investing website Seeking Alpha that the Partnership's enterprise value was approximately $19 billion. The Merger, however, is valued at only $18 billion.

41. On November 18, 2014, the day following the Partnership's analyst day, Regency units rose from $29.66 to close at $30.01 on the NYSE, more than $3.00 in excess of the consideration offered in connection with the Merger.

42. Moreover, of eight analysts reported by Yahoo! Finance, the median price target for Regency's units is $30.50 and the mean is $30.38, both more than $3.00 in excess of the consideration offered in connection with the Merger. In fact, the high price target is $34.00 per

unit. Of the eight analysts, even the lowest price target listed is $26.00 per unit. At the low price target, the Merger would offer only a meager 3.4% premium.

43. Moreover, the Merger consideration fails to adequately compensate Regency's unitholders for the significant synergies created by the Merger. As stated in the Partnership's January 26, 2015 press release announcing the Merger, the Merger will consolidate the Partnership and ETP's "complementary midstream operations in the Permian and West Texas areas." Indeed, the Merger will create the second largest MLP.

44. Despite the significant synergies inherent in the transaction for Enterprise, the Board failed to secure a fair price for either the intrinsic value of the Partnership's assets or the value of the Partnership's assets to ETP.

45. ETP is seeking to acquire the Partnership at the most opportune time, at a time when the Partnership is performing very well and is positioned for tremendous growth.

*The Inherent Conflicts of Interest*

46. That the Board would approve the Merger with ETP for insufficient consideration is unsurprising—each is part of the "Energy Transfer family of partnerships." Indeed, ETP and Regency are both indirect subsidiaries of ETE.

47. On May 26, 2010, ETE acquired Regency GP, the Partnership's general partner. As stated in the Partnership's quarterly report on Form 10-Q filed with the SEC on August 9, 2010, the acquisition by ETE of Regency GP means that ETE controls the Partnership and there exists a risk of conflicts of interest. Specifically, the 10-Q stated, in part:

> **Our general partner is owned by ETE, which also owns the general partner of Energy Transfer Partners, L.P. This may result in conflicts of interest.**
>
> *ETE owns our general partner and as a result controls us*. ETE also owns the general partner of Energy Transfer Partners, L.P., or ETP, a publicly traded partnership with which we compete in the natural gas gathering, processing and

13

transportation business. The directors and officers of our general partner and its affiliates have fiduciary duties to manage our general partner in a manner that is beneficial to ETE, its sole owner. At the same time, our general partner has fiduciary duties to manage us in a manner that is beneficial to our unitholders. Therefore, *our general partner's duties to us may conflict with the duties of its officers and directors to its sole owner. As a result of these conflicts of interest, our general partner may favor its own interest or those of ETE[,] ETP, or their owners or affiliates over the interest of our unitholders*.

Such conflicts may arise from, among others, the following:

- Decisions by our general partner regarding the amount and timing of our cash expenditures, borrowings and issuances of additional limited partnership units or other securities can affect the amount of incentive compensation payments we make to the parent company of our general partner[.]
- ETE and ETP and their affiliates may engage in substantial competition with us[.]
- Neither our partnership agreement nor any other agreement requires ETE or its affiliates, including ETP, to pursue a business strategy that favors us. *The directors and officers of the general partners of ETE and ETP have a fiduciary duty to make decisions in the best interest of their members, limited partners and unitholders, which may be contrary to our best interests.*
- *Our general partner is allowed to take into account the interests of other parties, such as ETE and ETP and their affiliates, which has the effect of limiting its fiduciary duties to our unitholders.*
- Some of the directors and officers of ETE who provide advice to us also may devote significant time to the business of ETE and ETP and their affiliates and will be compensated by them for their services.
- Our partnership agreement limits the liability and reduces the fiduciary duties of our general partner, while also restricting the remedies available tour unitholders for actions that, without these limitations, might constitute breaches of fiduciary duty.
- Our general partner determines the amount and timing of asset purchases and sales and other acquisitions, operating expenditures, capital expenditures, borrowings, repayments of debt, issuances of equity and debt securities and cash reserves, each of which can affect the amount of cash available for distribution to our unitholders.
- Our general partner determines which costs, including allocated overhead costs and costs under the services agreement we have entered into with and affiliate of ETE, incurred by it and its affiliates are reimbursable by us.
- Our partnership agreement does not restrict our general partner from causing us to pay it or its affiliates for any services rendered on terms that are fair and reasonable to us or entering into additional contractual

>arrangements, such as the services agreement we have with an affiliate of ETE, with any of these entities on our behalf.
>
>Specifically, certain conflicts may arise as a result of our pursuing acquisitions or development opportunities that may also be advantageous to ETP. Although any material transaction between us and ETP must be approved by our conflicts committee, consisting of three independent directors, if we are limited in our ability to pursue such opportunities or if ETP is allowed access to our information concerning such opportunities, we may not realize any or all of the commercial value of such opportunities and our business, results of operations and the amount of our distributions to our unitholders may be adversely affected. ***Although we, ETE and ETP have adopted a policy to address these conflicts and to limit the commercially sensitive information that we furnish to ETE, ETP and their affiliates, we cannot assure that such conflicts may not occur.***

(Emphasis added.)

48. As ETE is the owner of both Regency GP and EGP, there is significant overlap in the management of the various companies. Defendant McReynolds is not only a director of Regency GP, but also the president and a director of ETE. In addition, several of the Partnership's executives have close ties to ETE and ETP. Jim Holotik, Regency's executive vice president and chief commercial officer previously "le[d] the mergers and acquisitions efforts for Energy Transfer." Richard Rehm, Regency's executive vice president of operations, previously "served as Executive Vice President, Permian Basin Commercial Supply and Marketing for Energy Transfer Company." Todd Carpenter, Regency's senior vice president and general counsel, previously "served as Associate General Counsel for Energy Transfer Partners, L.P."

49. Finally, as of February 1, 2014 ETE and related entities owned 26.8% of the Partnership's outstanding units.

*The Preclusive Deal Protection Devices*

50. In addition, as part of the Merger Agreement, the defendants agreed to certain deal protection devices that operate conjunctively to lock-up the Merger and ensure that no competing offers will emerge for the Partnership.

15

51. Section 5.3 of the Merger Agreement includes a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by ETP. Section 5.3(a) demands that the Partnership terminate any and all prior or on-going discussions with other potential acquirers.

52. Pursuant to § 5.3(c) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify ETP of the bidder's identity and the terms of the bidder's offer within 24 hours. Thereafter, § 5.3(d)(i) demands that should the Board determine to enter into a superior competing proposal, it must grant ETP five days in which the Partnership must negotiate in good faith with ETP (if ETP so desires) and allow ETP to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

53. In other words, the Merger Agreement allows Enterprise access to any rival bidder's information and provides ETP a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor ETP, which can piggy-back on the due diligence of the foreclosed second bidder.

54. Further, § 7.3(a) of the Merger Agreement provides that a termination fee of $450 million must be paid to ETP by Regency if the Partnership decides to pursue a competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer. According to the Partnership's most recent quarterly report on Form 10-Q, filed with the SEC on November 6, 2014, as of September 30, 2014, the Partnership only held $15 million in cash and cash equivalents, only one thirtieth of the termination fee.

55. Moreover, as stated above, ETE, which controls both Regency, Regency GP, ETP, and EGP, already controls 26.8% of the Partnership's outstanding units.

56. Ultimately, these preclusive deal-protection provisions illegally restrain the Partnership's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative Merger that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

57. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Partnership unitholders will suffer absent judicial intervention.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**On Behalf of Plaintiff and the Class Against the Individual Defendants
For Breach of Fiduciary Duties**

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the unitholders of Regency and have acted to put their personal interests, and the interests of ETP and ETE, ahead of the interests of Regency unitholders.

60. The Individual Defendants' recommendation of the Merger will result in a change of control of the Partnership, which imposes heightened fiduciary responsibilities to maximize Regency's value for the benefit of the unitholders and requires enhanced scrutiny by the Court.

61. The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the unitholders of Regency because, among other reasons:

(a) they failed to take steps to maximize the value of Regency to its public unitholders and agree to an exchange ratio reflecting that value, and instead took steps to avoid competitive bidding;

(b) they failed to properly value Regency; and

(c) they ignored or did not protect against the numerous conflicts of interest resulting from the Board's own interrelationships or connection with the Merger.

62. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Regency's assets and will be prevented from benefiting from a value-maximizing transaction.

63. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Merger, to the irreparable harm of the Class.

64. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**On Behalf of Plaintiff and the Class Against ETP, EGP, and ETE For Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty**

65. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

66. ETP, EGP, and ETE have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Regency unitholders, and have participated in such breaches of fiduciary duties.

67. ETP, EGP, and ETE knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing ETP, EGP, and ETE rendered substantial assistance in

order to effectuate the Individual Defendants' plan to consummate the Merger in breach of their fiduciary duties

68.    Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    Declaring this action to be a class action and certifying Plaintiff as the Class representative and her counsel as Class counsel;

(B)    Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Merger, unless or until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for unitholders.

(C)    In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D)    Directing Defendants to account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)    Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)    Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated: February 3, 2015							Respectfully submitted,

                  **THE KENDALL LAW GROUP, LLP**

                  /s/ Joe Kendall
                  JOE KENDALL
                  Texas Bar No. 11260700
                  jkendall@kendalllawgroup.com
                  JAMIE J. MCKEY
                  Texas Bar No. 24045262
                  jmckey@kendalllawgroup.com
                  3232 McKinney Avenue, Suite 700
                  Dallas, Texas 75204
                  Telephone:  214-744-3000
                  Facsimile:  214-744-3015 (Facsimile)

                  *Liaison Counsel for Plaintiff*

                  **LEVI & KORSINSKY LLP**
                  Shane T. Rowley
                  30 Broad Street, 24th Floor
                  New York, New York 10004
                  Tel: (212) 363-7500
                  Fax: (866) 367-6510

                  *Attorneys for Plaintiff*